On this is an appeal from an order of Judge Shirley Strickland Saffold, I dissent. The majority's result-oriented opinion calls to mind Thomas Jefferson's thoughts on how they are drafted.[1] The majority first suggests that in reviewing a sexual predator determination, the judges of this court are suddenly emasculated[2] and must be fawningly differential to whatever a trial judge finds to be a fact or the weight given to guidelines or other evidence. A reviewing court is bound to accept findings of fact if supported by competent credible evidence;[3]
however, without deference to the trial judge's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard.[4] The reader will note that the majority carefully avoids ever stating Ellison's assignment or error by baldly claiming he merely contests the classification. This was done to disguise the fact that Ellison should have prevailed.
Ellison's sole assignment of error states:The Evidence Was Insufficient as a Matter of Law to Prove by `Clear and Convincing Evidence' That Appellant Is Likely to Engage in Future Sexually Oriented Offenses.
With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the * * * verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy.[5] Whether the evidence is legally sufficient to sustain a verdict is a question of law,[6]
subject to a de novo review.[7] The majority, however, have thumbed their noses at the Ohio Supreme Court and decided that this court now reviews a sufficiency of the evidence challenge using a manifest weight analysis.[8] The judges of this court should simply admit that one does not employ a manifest weight standard to address a sufficiency challenge,[9] and cease blindly accepting this misstatement. To do otherwise reflects a conscious intent by members of this court to decide that an accused sexual predator does not have the right to make a sufficiency challenge, and thus provide some members of this court with a rationale for denying preclusive effect to sexual predator determinations reversed for insufficient evidence, since a reversal on weight of the evidence does not have preclusive effect, but is instead grounds for a new trial.[10] The majority declines to explain why one cannot attack legal sufficiency in a civil case, but simply cites State v. Cook, supra, for the proposition that the manifest weight standard applies in all sexual predator proceedings.
In Cook, the Ohio Supreme Court reversed an appellate judgment in favor of the offender, and made a manifest weight finding as a means of affirming the trial judgment, in the apparent absence of any assignment of error from the offender and in response to a general assignment of error made in the appellate court. As will be shown below, manifest weight review includes sufficiency review and, therefore, manifest weight analysis was appropriate in this circumstance because Cook had no specific evidentiary challenge before the court, and had made a general assignment in the court below that arguably attacked the weight of the evidence. In an exercise of prudence, then, the Ohio Supreme Court addressed manifest weight in Cook to ensure proper resolution. Indeed, in State v. Eppinger,[11] in a portion of its opinion titled Sufficiency of the Evidence the Supreme Court stated:[I]n order for the offender to be designated a sexual predator, the state must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses. (Emphasis sic.)[12] The court made clear that the State must prove each element to justify the classification, and concluded that the State had failed to provide sufficient evidence of the defendant's likelihood of re-offending.[13]
Similarly, the majority's reliance on C.E. Morris Co. v. Foley Constr. Co.[14] is misplaced. C.E. Morris Co. does not posit that sufficiency review is unavailable, but holds only that a sufficiency review is implicitly included in a manifest weight review.[15]
In December of 1981, Ellison pleaded guilty to an amended charge of sexual battery and one count of gross sexual imposition. He was sentenced by Judge Ralph McAllister to concurrent terms of one to ten years in prison, with the prison time suspended, and he was placed on three years of probation, 120 days in the county workhouse and ordered to become employed and observe an early curfew. Clearly, given the suspended prison terms imposed, Judge McAllister did not consider Ellison to present a serious threat of re-offending at that time.
He violated his probation in 1982 and a capias warrant was issued. West Virginia State Police arrested him in March of 1994 on that outstanding warrant and then released him. He drove to Cleveland, turned himself in and his original sentence was imposed.
Sometime before November 9, 1999, the Ohio Department of Rehabilitation and Corrections requested that Ellison be adjudicated a sexual predator.[16] He was returned from Madison Correctional Institution for a hearing held on April 20, 2000.[17] During that hearing the judge granted Ellison's request for a psychological examination and the hearing reconvened on June 15, 2000.
Ellison's attorney presented, and both he and the prosecutor discussed, parts of the Court Psychiatric Clinic Sexual Predator Evaluation. Based upon the results of various tests and i1interviews, the evidence indicated that Ellison was in the medium-low risk category for sexual recidivism. Ellison was then designated a sexual predator.
A "sexual predator" is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.[18] A judge shall make the determination that a sex offender is a sexual predator only if the conclusion is supported by clear and convincing evidence.[19]
Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to facts sought to be established.[20]
A judge is to base a sexual predator determination upon all relevant factors, including ten specifically identified in R.C. 2950.09(B)(2); i.e., from age and number of victims to display and threat of cruelty, and should discuss on the record the evidence and factors relied upon in determining the likelihood of a defendant's recidivism.[21]
The following R.C. 2950.09(B)(2) factors were in the record: (1) Ellison's victims were two boys molested on one occasion; (2) he declined to participate in a prison sex offender program because, in his own words, [a]t my prison, the program is a big joke. If I'm going to do something like that I want to be serious about it. If the parole board wants me to do something on the outside I would have no problem with that; (3) the nature of the sexual contact itself; and (4) as a child, Ellison was molested on three occasions by two adult males.
The record also reflected: (1) Ellison is forty years old; (2) as a juvenile, he had a limited non-sexual criminal history and the 1981 crimes were his only sexual offenses as an adult; (3) while he did have a problem with drug use and alcohol abuse, he has been completely sober since 1988; (4) in 1999 he participated in the prison 90-day substance abuse program with the 12-week aftercare program; (5) his post-offense social environment and relationships with family and women have been consistently stable and normal; (6) Ellison was married in 1984, remains married to a supportive spouse, and has goal-oriented career aspirations; (7) he professes to have found new religious faith in 1994 and retains it; (8) as part of his court-ordered clinical assessment, Ellison underwent a STATIC-99 evaluation designed to rate his statistical probability of re-offending, and he registered as a low-to-medium risk; (9) an MMPI 2 revealed Ellison had evaluations within normal limits and that he typically functions in an adequate manner in most aspects of his life situation; (10) the report further revealed Ellison displayed seven factors which were not indicative of risk for sexual recidivism and only two that were; and (11) there was no indication that Ellison committed any sexual offense from 1981 until his imprisonment in 1994 and his prison record reflects nothing of that nature.
In rendering her decision, the judge noted testimony at the hearings and the psychological evaluation as the evidence she considered in reaching her decision to declare Ellison a sexual predator. She specifically indicated that Ellison's refusal to participate in a prison treatment program, combined with his own history of being molested as a child, weighed heavily in her decision because of her own personal knowledge.
The 2000 psychological evaluation had revealed that at the age of seven or eight years, Ellison, on two occasions, was fondled by his nineteen-year-old uncle and on a later but unspecified age or date was fondled by an unidentified man. The judge stated that, because Ellison had been molested on two different occasions, probably dropped out of school at age thirteen years [S]o probably the molestation started about that time, refused to identify the second molester and declined to participate in a prison sex offender program, she found that chances are very likely that he will, in fact, do it again. It was her contention that in sexual molestation cases, one starts as a victim and without counseling the victim starts to molest, then you don't stop until you get that treatment. She based this conclusion upon her background as a social worker and then further stated:
I can say almost certainly that the time he was molested by the second person was also the time he had been a reasonably good student, he was going to school, doing all the things, didn't give the teachers any problem. He indicates that he was molested a second time and after the second time he literally sort of washed out, stopped going to school, stopped participating. He just gave up.
To the extent the determination was based on personal knowledge not otherwise in evidence, the decision was contrary to law.[22] There was no evidence, other than the circumstances surrounding the 1981 molestations and Ellison's own childhood encounters, to support a conclusion that an offender's own prior history of being a victim of abuse contributed to a determination that the offender would likely commit another sexual offense. While other courts have acknowledged an offender's own history of abuse in making a sexual predator determination, I note that even such offenders have not been designated as sexual predators in the absence of a multitude of other compelling factors.[23] Moreover, there is nothing in the record to support the conclusion that Ellison was molested at age thirteen, or that because he was molested, he dropped out of school. Indeed, he claims that at age thirteen to have briefly joined a gang and began using marijuana two to three times a week with friends; this could just as easily be the likely reason that he began to avoid school.
In light of Ellison's clean post-conviction criminal record and history until his discovery in 1994, and his sobriety, stability, and current psychological evaluations as a low to low moderate and medium to low risk, I cannot find that Ellison's own history of abuse and failure to seek treatment in prison, so long after the sexual offenses, could have provided the judge with a firm belief or conviction that he would be likely to commit another sexual offense in the future.
I do not excuse Ellison's past conduct, for which he remains incarcerated, but Ohio's sexual predator law exists not to punish Ellison for his past sexually deviant conduct, but rather, to protect society from individuals likely to commit sexual offenses in the future and to warn those geographically near to the offender that he presents such a risk. Viewing the evidence in favor of Ellison, there was insufficient clear and convincing evidence that he is likely to commit another sexual offense in the future. The State failed in its burden of proof.[24]
The majority's preachy, holier-than-thou attitude about the value of the results of tests given to Ellison is at odds with one of its own purported authorities, State v. Eppinger,[25] which held Admittedly, predicting future behavior of a sex offender, or anyone else, for that matter, is an imperfect science. Nevertheless, R.C. Chapter 2950 requires it and the evidence presented by a psychologist, psychiatrist, or other expert in the field of predicting future behavior may be the best tool available to the court to assist in making these determinations.
What is even more amazing is the majority's contention that, from a silent record, the judge actually considered the evidence light of her express reasons for finding him to be a predator.[26] Interestingly, the majority author gratuitously attacks State v. Krueger,[27] in which he was the dissenter. In that case, the alleged overwhelming statistical evidence referred to in discussions of recidivism rates of sexual offenders who commit crimes against children, both by the legislature and various cases is dissected. I would refer the reader to that case and again state: [It] is improper to cite phantom statistical evidence, no matter how `overwhelming' the apparition.[28] The Ohio Supreme Court has specifically recognized the profound impact[29] and grave consequences[30] flowing from a sexual predator finding, and has liberally interpreted the statutory scheme, which already grants rights ordinarily reserved to criminal defendants.[31] Where was the clear and convincing evidence that Ellison was likely to sexually re-offend in the future? As in the Hans Christian Anderson story,[32] a manifest weight analysis will not disguise the Emperor's nakedness.
[1] An opinion is huddled up in conference, perhaps by a majority of one, delivered as if unanimous, and with the silent acquiescence of lazy or timid associates, by a crafty chief judge . . . Andrew A. Lipscomb, The Writing of Thomas Jefferson, 1903.
[2] Five of the twelve judges on the Eighth District Court are females.
[3] State v. Schiebel (1990), 55 Ohio St.3d 71, 298 N.E.2d 137.
[4] State v. Curry (1994), 95 Ohio App.3d 93, State v. Fellows (May 22, 1997), Cuyahoga App. No. 70900.
[5] State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541 (Internal cites omitted).
[6] State v. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148.
[7] Goodyear Tire and Rubber Co. V. Aetna Cas. Sur. Co. (2002),95 Ohio St.3d 512, 769 N.E.2d 835.
[8] State v. Childs (2001), 142 Ohio App.3d 389, 395, 755 N.E.2d 958,962, written by Judge O'Donnell, citing as his authority State v. Perry (Nov. 16, 2000), Cuyahoga App. No. 77724, unreported, also written by Judge O'Donnell, citing State v. Cook (1998), 83 Ohio St.3d 404 where, based upon the underlying appellate opinion, the relevant challenge appears to be a general assignment that the judge erred in determining the defendant to be a sexual predator, a challenge in part relating to the credibility, to the manifest weight, of evidence in a presentence report that was not part of the record. State v. Cook (Aug. 7, 1997), Allen App. No. 1-97-21, unreported.
[9] See, e.g., State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387,678 N.E.2d 541, 546-547 (discussing difference between weight and sufficiency).
[10] Civ.R. 59(A)(6).
[11] (2001), 91 Ohio St.3d 158, 743 N.E.2d 881.
[12] Id. at 163, 743 N.E.2d at 886-887.
[13] Id. at 164-165, 743 N.E.2d at 887-888.
[14] (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.
[15] Id.
[16] On November 29, 1999, the Ohio Parole Board subjected Ellison to a Pre-Parole Clinical Risk Assessment which reviewed high-risk factors associated with violent or sexual re-offending, and he was found to display a low to a low-moderate degree of risk to re-offend.
[17] The State entered the Pre-Parole Clinical Risk Assessment into evidence.
[18] R.C. 2950.01(E).
[19] State v. Williams, (2000) 88 Ohio St.3d 513, 519, 728 N.E.2d 342,351.
[20] Cross v. Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; State v. Eppinger, (2001)91 Ohio St.3d 158, 743 N.E.2d 881.
[21] State v. Eppinger, supra at 159.
[22] See State v. Krueger, (Dec. 19, 2000), Cuyahoga App. No. 76624.
[23] See State v. McCoy, (Dec. 14, 2000), Cuyahoga App. No. 76669, unreported; See State v. Schroer, (Mar. 31, 2000), Auglaize App. No. 2-99-44, unreported.
[24] App.R. 12(B); Moncol v. Bd. of Edn. of N. Royalton School Dist. (1978), 55 Ohio St.2d 72, 378 N.E.2d 155; Leighton v. Hower Corp. (1948), 149 Ohio St. 72, 77 N.E.2d 72, paragraphs two and three of the syllabus.
[25] (2001), 91 Ohio St.3d 158 at 163.
[26] See dissent pages 11, 12.
[27] Krueger, (Dec. 19, 2000), Cuyahoga App. NO. 76624.
[28] Krueger, at pg. 10.
[29] Id.
[30] Eppinger, 91 Ohio St.3d at 162, 743 N.E.2d at 885.
[31] Id., at syllabus; R.C. 2950.09(B)(1). 
[32] The Emperor's New Clothes.